**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
TOPEVER CORP.,                          :

                                :

             **Plaintiff,**          :

                                :        **12 CV 869 (HB)**

   - against -               :

                                :        <u>**OPINION & ORDER**</u>

THE ENE GROUP LLC,            :
THE UNDERGROUND GROUP LLC,   :
SALLY JEMAL, ROBERT GROSSMAN, :
JOHN DOES I-X,               :
             **Defendants.**      :
-----------------------------------------------------------------x
**Hon. HAROLD BAER, JR., District Judge:**

      Before the Court is a motion dismiss brought by the ENE Group LLC ("ENE") and the

Underground Group LLC ("TUG") against Topever Corporation ("Plaintiff"). Defendants TUG

and ENE move to dismiss all claims in the Second Amended Complaint ("SAC") against TUG

and all but the first and second claims against ENE. Two weeks after the motion was fully

briefed, remaining Defendants Sally Jemal and Robert Grossman moved to dismiss all claims in

the SAC against them by relying on the same brief. For the reasons stated below, ENE and

TUG's motion to dismiss is GRANTED in part and DENIED in part. Defendants Sally Jemal

and Robert Grossman's motion to dismiss is DENIED.

### Background

      Plaintiff is a sourcing and manufacturing company based in Taiwan that supplies

accessories for electronic products to major retailers in the United States. SAC ¶¶ 8, 12.

Defendants ENE and TUG are both limited liability companies based in New York, founded by

Marvin Jemal ("Marvin"), the Owner, the General Manager, and the President of both ENE and

TUG. *Id*. ¶¶ 3, 4, 13. Defendant Robert Grossman is Marvin's son-in-law and an Officer of ENE

and Executive Vice President of TUG. *Id*. ¶ 5. Defendant Sally Jemal is Marvin's mother who

owns 99 percent of TUG shares. *Id*. ¶ 6.

      Plaintiff alleges that ENE has an outstanding invoice of $838,457.40 under its contract

with Plaintiff for goods delivered to various retailers in the period between November 23, 2008

and August 22, 2009. *Id*. ¶¶ 14, 15. The SAC alleges that Defendants "duped" Plaintiff into

delivering the goods "in exchange for defendants' repeated promises to pay the Plaintiff

directly," all the while they were withholding the payments, lying about the state of payments from the retailers, and creating a shell corporation. *Id.* ¶¶ 15, 16.  Since December 2008, Plaintiff repeatedly requested Marvin, to pay the balances due as a condition for shipping and releasing all the goods, but Marvin responded with various excuses and unfulfilled promises to pay soon. *Id.* ¶¶ 20-30.  Specifically, Plaintiff alleges that in order to "induce" continued shipment of products from Plaintiff, ENE proposed the idea of opening a letter of credit in February 2009, executed a promissory note in June 2009, and made "token payments" in June and July. *Id.* ¶¶ 33, 34, 42. On or about June 19, 2009, ENE issued a letter of credit through Star Funding, Inc., and Plaintiff, based on that letter and representations made by ENE and Marvin, executed the contract and released the goods. *Id.* ¶¶ 43-44.  However, the letter of credit was invalid and unenforceable, and Plaintiff alleges that ENE and Marvin "knew" but nonetheless "fraudulently induced" Plaintiff to execute the contract. *Id.* ¶¶ 45-46.

Plaintiff alleges "on information and belief" that Marvin and his son-in-law Defendant Robert Grossman, an ENE officer, were "raiding the corporate assets" of ENE, "opening other companies" such as TUG, and "transferring assets to family members," all the while Marvin and Defendant Grossman were "placing orders and making contracts in the name of ENE." *Id.* ¶¶ 51-54.  Specifically, Plaintiff alleges that Marvin, along with Defendant Grossman, closed ENE and opened TUG to "shield themselves from liability" on or about January 8, 2010, structuring the shares of TUG to benefit Marvin's wife and daughter, Robin Jemal and Sally Grossman, such that the former received 75 percent and the latter 25 percent of the TUG shares. *Id.* ¶¶ 47-48.  It is also alleged that Marvin restructured TUG shares to "further insulate himself, Defendant Grossman, ENE and Underground." *Id.* ¶ 49. In August 2010, after meeting Plaintiff in New York, Marvin is alleged to have given 99 percent of the shares to his mother, Defendant Sally Jemal, leaving only 0.75 percent to Marvin's wife and 0.25 percent to Marvin's daughter. *Id.* Marvin, his wife Robin Jemal, and his daughter Sally Grossman have all filed for Bankruptcy Protection in the Eastern District of New York and are not named as Defendants in the Second Amended Complaint. Id. ¶¶ 10-11.  Lastly, a separate complaint alleging ENE's non-payment was filed by Accessories Bags & Cosmetics (HK) Ltd. in this district, but ENE was closed prior to the entry of a default judgment. *Id.* ¶ 50.

**Legal Standard**

To survive Defendants' motion under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The requirement that the court accept all factual allegations as true does not apply to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* The court's determination of whether a complaint states a "plausible claim for relief" is a "context-specific task" that requires application of "judicial experience and common sense." *Id.* at 679.

Federal courts sitting in diversity apply the substantive law of the forum state on dispositive issues. *Erie R. Co. v. Tomkins*, 304 U.S. 64, 78-80 (1938); *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994). Procedural matters are governed by federal law. *See Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 427 (1996).

**Discussion**

Certain claims in the SAC have been withdrawn. I resolve those that remain: the fraudulent conveyance claim against ENE and TUG; and the breach of contract, account stated, fraud in inducement, unjust enrichment, and constructive trust claims against TUG.

**A. Fraudulent Conveyance Claim against ENE and TUG**

Under New York law, [1] a debtor may be liable for constructive fraudulent conveyance regardless of intent if a transfer was made without "fair consideration" and the debtor "is or will be thereby rendered insolvent." N.Y. Debt. & Cred. Law § 273. Even if there is fair consideration, intentional fraudulent conveyance may exist if the conveyance was made "with actual intent . . . to hinder, delay, or defraud either present or future creditors." *Id.* § 276. As the latter claim is that of fraud, the complaint must meet the particularity requirement under Fed. R. Civ. P. 9(b) by alleging "the time, place, particular individuals involved, and specific conduct at issue." *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198,

---

[1] The parties do not dispute that New York law governs in this case, and their briefs are based exclusively on New York law. *See Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 61 (2d Cir. 2004) ( "[T]he parties' briefs assume that New York law controls this issue, and such implied consent . . . is sufficient to establish choice of law.") (internal quotation marks omitted).

221 (S.D.N.Y. 2002) (citing *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir.1986)).  As for scienter, because proving "actual intent" is difficult, the plaintiff may rely on "badges of fraud" to allege intent, *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005), such as: "(1) the inadequacy of consideration received in the allegedly fraudulent conveyance; (2) the close relationship between parties to the transfer; (3) information that the transferor was rendered insolvent by the conveyance; (4) suspicious timing of transactions or existence of a pattern after the debt had been incurred or a legal action against the debtor had been threatened; or (5) the use of fictitious parties," *Harris v. Coleman*, 863 F. Supp. 2d 336, 342 (S.D.N.Y. 2012) (quoting *Eclaire Advisor Ltd. v. Daewoo Eng'g & Constr. Co.*, 375 F. Supp. 2d 257, 268–269 (S.D.N.Y.2005)).

TUG argues that Plaintiff fails to meet the particularity requirements of Fed. R. Civ. P. 9(b).  Here, the SAC alleges that all of ENE's assets were transferred to TUG during a specific time period, identifies the individuals involved in the transfer, and alleges at least three of the five "badges of fraud" listed above: close relationship between the parties involved in the transfer, transferor's insolvency, and suspicious timing.  According to the SAC, TUG is a supplier to major retailers like ENE, and was opened on or about January 8, 2010 by Marvin and Defendant Grossman, ENE's founder and officer respectively, after ENE had closed. SAC ¶ 47. During that time period, Plaintiff could enforce neither ENE's promissory note nor the letter of credit issued on its behalf in June 2009, and ENE faced an unrelated legal action in this district, also for non-payment, in which it failed to appear. *Id.* ¶¶ 42-46, 50.  The SAC further alleges that in the time period between June 2009 and January 2010, Marvin fraudulently conveyed "all of ENE's assets" from the company to himself, family members, and co-conspirators. *Id.* ¶ 42. Since then, ENE closed, TUG's shares were specifically structured to shield both Marvin and Defendant Grossman from liability and benefit their family members—namely Defendant Sally Jamal, who is Marvin's mother, as well as Marvin's daughter and wife—and Marvin, his wife, and his daughter have all filed for bankruptcy. *Id.* ¶¶ 10-11.  These facts are sufficient to survive a motion to dismiss at this stage of the litigation. *See Silverman Partners LP v. Verox Group*, 08 Civ. 3103 (HB), 2010 WL 2899438 (S.D.N.Y. July 19, 2010) (denying motion to dismiss even though the transferred asset was not specified because four badges of fraud were present); *see also Sullivan v. Kodsi*, 373 F. Supp. 2d 302, 306 (S.D.N.Y. 2005) (denying motion to dismiss even though certain alleged transfers were non-specific and made over a three-year period on the

ground that the facts were "peculiarly within the opposing party's knowledge" and several "badges of fraud" were present).

**B. Breach of Contract Claim against TUG**

Under New York law, a breach of contract claim must satisfy the following elements: "(1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011) (citations omitted).  TUG argues that the contract claim against it must be dismissed because only a contract with ENE is alleged.  Plaintiff, however, argues that the Court should nonetheless deny Defendants' motion because the Complaint contains sufficient facts to support Plaintiff's claims against TUG as ENE's successor. Pl.'s Opp. 2.

I agree with Plaintiff that the contract claim against TUG based on successor liability is viable; as explained above, the fraudulent conveyance claim has been adequately pled.  While a corporation is generally not liable for the liabilities of another, there are exceptions to the rule. *See New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006) (citing, inter alia, *Schumacher v. Richards Shear Co.*, 451 N.E.2d 165 (N.Y. 1983)).  Here, while Plaintiff does not explain which exception applies, "[w]hen a party has alleged facts to show that a fraudulent conveyance may have taken place, it can be inferred that the transaction was undertaken to defraud creditors and the exception for imposing successor liability applies." *Silverman Partners*, 2010 WL 2899438, at *6 (citing *A.J. Heel Stone, L.L.C. v. Evisu Int'l, S.R.L.*, No. 03 Civ. 1097, 2006 WL 1458292, at *4 (S.D.N.Y. May 25, 2006)).

Although Defendants point to the absence of words "successor in interest" in the SAC as a ground for dismissal, "[g]enerally a complaint that gives full notice of the circumstances giving rise to the plaintiff's claim for relief need not also correctly plead the legal theory or theories and statutory basis supporting the claim." *Simonton v. Runyon*, 232 F.3d 33, 36-37 (2d Cir. 2000) (citing *Marbury Management, Inc. v. Kohn*, 629 F.2d 705, 712 n. 4 (2d Cir. 1980)). Since Plaintiff has alleged sufficient facts for at least one successor liability exception to be applicable, Defendants' motion to dismiss the contract claim against TUG is denied.

**C. Account Stated Claim against TUG**

"To properly assert an account stated claim under New York law, a plaintiff must plead that "(1) an account was presented, (2) it was accepted as correct, and (3) debtor promised to pay the amount stated." *Liddle & Robinson, LLP v. Garrett*, 720 F. Supp. 2d 417, 426 (S.D.N.Y. 2010). The SAC alleges sufficient facts to support successor liability theory based on fraudulent transfer. Therefore, while the SAC does not allege any account presented to or accepted by TUG, the claim against TUG may not be dismissed at this stage of the litigation.

**D. Fraud in the Inducement Claim against TUG**

To prove fraud under New York law, Plaintiff must show that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415-16 (2d Cir. 2006). As a general matter, a fraud claim may not restate a claim for breach of contract, unless the misrepresentation is collateral to the contract it induced. *Id.* at 416. The pleading must also meet the particularity requirement under Fed. R. Civ. P. 9(b).

Plaintiff concedes that the fraud claim is duplicative of the contract claim and withdraws it against ENE, but asks the Court to deny Defendant's motion against TUG "until after discovery has concluded and a ruling can be made on TUG's status as ENE's successor in interest." Pl.'s Opp. 4. But that is simply not the standard for a motion to dismiss. Since the SAC does not allege any material false representations made by TUG, let alone any reliance on any statements made by TUG, the fraud in inducement claim against TUG is dismissed. *See, e.g.*, *Hughes v. BCI Int'l Holdings, Inc.*, 05 Civ. 9085 (HB), 2007 WL 927200, at *3 (S.D.N.Y. Mar. 27, 2007) (dismissing fraud claims for failure to identify specific misrepresentations made by the defendant).

**E. Unjust Enrichment and Constructive Trust Claims against TUG**

Under New York law, four elements must be satisfied to establish a constructive trust: "(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject res made in reliance on that promise; and (4) unjust enrichment." *In re First Cent. Fin. Corp.*, 377 F.3d 209, 212 (2d Cir. 2004). In turn, to recover under the theory of unjust enrichment, the plaintiff must show: (1) that the defendant benefited; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution. *Hughes v. BCI Int'l*

*Holdings, Inc.*, 452 F. Supp. 2d 290, 304 (S.D.N.Y. 2006). Under certain circumstances,
however, the existence of a contract governing the subject matter of the dispute may preclude
unjust enrichment claims, even if one of the parties to the lawsuit is not a party to the contract.
*Id.*; *see also Am. Med. Ass'n v. United Healthcare Corp.*, 00 Civ. 2800, 2007 WL 683974
(S.D.N.Y. Mar. 5, 2007) (quoting a string of New York state court cases).

Plaintiff once again concedes that the unjust enrichment and constructive trust claims are
duplicative of the contract claim and withdraws them against ENE but argues that these claims
should not be dismissed against TUG at this stage of litigation in case the successor liability
cannot be established. Pl.'s Opp. 4. I agree with Defendant that the constructive trust claim
against TUG must be dismissed because there is no allegation of confidential or fiduciary
relationship. However, I do not dismiss the unjust enrichment claim at this stage of the litigation
because TUG, unlike ENE, is not a party to the contract. *See Hughes*, 452 F. Supp. 2d 290, 304
(S.D.N.Y. 2006); *see also Cal Distrib., Inc. v. Cadbury Schweppes Americas Beverages, Inc.*, 06
Civ. 0496, 2007 WL 54534, at *10 (S.D.N.Y. Jan. 5, 2007) ("Because the parties disagree as to
whether the [] Agreements are binding on the Defendants, the Court cannot conclude that the
unjust enrichment cause of action is precluded.").

**F. Defendants Sally Jemal and Robert Grossman's Joinder in Motion**

Defendants' memorandum in support and reply deal exclusively with Plaintiff's claims
against ENE and TUG but is silent as to why the claims against Defendants Sally Jemal and
Robert Grossman should be dismissed. Consequently, their motion must be denied. As a result,
I need not and have not considered Plaintiff's Opposition Memorandum, etc.

### Conclusion

For the reasons stated above, ENE and TUG's motion with respect to the fraud in the
inducement and the constructive trust claims against TUG is GRANTED and their motion with
respect to the fraudulent conveyance claim against TUG and ENE, as well as the contract,
account stated, and unjust enrichment claims against TUG are DENIED. Defendants Sally Jemal
and Robert Grossman's motion is DENIED. The Clerk of the Court is instructed to close the two
motions and remove them from my docket.

**SO ORDERED**
**March   , 2013**
**New York, New York**

Hon. Harold Baer, Jr.
U.S.D.J.

7